# EXHIBIT A

NYSCEF
New York County Supreme Court

**Document List**

Index #   **657326/2019**

Created on:03/02/2020 02:42 AM

Case Caption:   **Perella Weinberg Partners LP v. Mission Coal Funding, LLC et al**
Judge Name:   **Barry R Ostrager**

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 1 | SUMMONS WITH NOTICE | Processed | 12/10/2019 | Belelieu, C. |
| 2 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service upon Jason R. McCoy | Processed | 12/18/2019 | Belelieu, C. |
| 3 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service upon Ken McCoy | Processed | 12/18/2019 | Belelieu, C. |
| 4 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service upon Mission Coal Funding, LLC | Processed | 12/18/2019 | Belelieu, C. |
| 5 | NOTICE OF APPEARANCE (POST RJI) | Processed | 01/22/2020 | Brennan, J. |
| 6 | COMPLAINT | Processed | 02/11/2020 | Belelieu, C. |
| 7 | EXHIBIT(S)<br>Engagement Letter dated October 1, 2018 | Processed | 02/11/2020 | Belelieu, C. |
| 8 | EXHIBIT(S)<br>Invoices | Processed | 02/11/2020 | Belelieu, C. |
| 9 | RJI -RE: REQUEST FOR PRELIMINARY<br>CONFERENCE | Processed | 02/14/2020 | Belelieu, C. |
| 10 | ADDENDUM - COMMERCIAL DIVISION (840C) | Processed | 02/14/2020 | Belelieu, C. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PERELLA WEINBERG PARTNERS LP,

               Plaintiff,

         v.

MISSION COAL FUNDING, LLC, JASON R.
MCCOY, and KEN MCCOY,

               Defendants.

Index No. _____/2019

**SUMMONS WITH NOTICE**

**TO THE ABOVE NAMED DEFENDANTS:**

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to appear in this action by serving a notice of appearance or demand for the complaint on Plaintiff's attorneys, Boies Schiller Flexner LLP, at the address set forth below within twenty (20) days after the service of this Summons (not counting the day of service itself), or within thirty (30) days after service is complete if the Summons is not personally delivered to you within the State of New York.

This action arises out of Defendants' failure to pay fees and expenses that they owe, jointly and severally, to Plaintiff for financial advisory services performed pursuant to an engagement letter dated October 1, 2018 (the "Engagement Letter"). Plaintiff asserts claims for breach of contract and account stated and, in the alternative, unjust enrichment and quantum meruit.

Plaintiff seeks damages in an amount to be determined at trial, but in no event less than $930,832.00. Plaintiff further seeks punitive and/or exemplary damages; pre-judgment and post-judgment interest at the maximum rate allowable by law; the reasonable costs and expenses

incurred in this action, including, to the extent applicable, counsel fees; and such other or further relief as the Court deems just and proper.

Plaintiff designates the County of New York as the venue for this action. The basis for this designation is the Engagement Letter which provides that all actions and proceedings arising out of, or relating to it, shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York. Venue is also proper in the County of New York pursuant to CPLR 503 because it is the county in which a substantial part of the events or omissions giving rise to the claims occurred.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer or appear, a judgment will be entered against you by default for the sum of at least $930,832.00, plus statutory interest from the date of May 6, 2019, attorneys' fees, and the costs and disbursements of this action.

Dated: New York, New York,
      December 10, 2019

                   /s/ Christopher D. Belelieu
                  Christopher D. Belelieu
                  Demetri Brumis Blaisdell
                  BOIES SCHILLER FLEXNER LLP
                  55 Hudson Yards
                  New York, NY 10001
                  Tel:  (212) 446-2300
                  Fax:  (212) 446-2350
                  Email:  cbelelieu@bsfllp.com
                          dblaisdell@bsfllp.com

                  *Attorneys for Plaintiff*
                  *Perella Weinberg Partners LP*

TO:   Mission Coal Funding, LLC
       6801 Falls of Neuse RD, Suite 100
       Raleigh, NC 27615

c/o Jason R. McCoy, Member
9113 Linslade Way
Wake Forest, NC 27587

Jason R. McCoy
9113 Linslade Way
Wake Forest, NC 27587

Ken McCoy
7608  Trail Blazer Trail
Wake Forest, NC 27587

3

FILED: NEW YORK COUNTY CLERK 12/18/2019 03:33 PM
NYSCEF DOC. NO.   Case 1:20-cv-01848-GBD   Document 2-1   Filed 03/02/20   Page 6 of 46   INDEX NO. 657326/2019

RECEIVED NYSCEF: 12/18/2019

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

**PERELLA WEINBERG PARTNERS LP,**
INDEX NUMBER: 657326/2019

*Plaintiff*
vs

**MISSION COAL FUNDING, LLC, JASON R. MCCOY, and KEN MCCOY,**

*Defendant*

## AFFIDAVIT OF SERVICE

State of North Carolina }
County of Wake }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of North Carolina.

That on 12/16/2019 at 9:31 AM at 7901 Strickland Rd, Suite 108, Raleigh, NC 27615

deponent served a(n) **Notice of Electronic Filing and Summons with Notice**

on **Jason R. McCoy**

by delivering thereat a true copy of each to **Gregory Inggs [Co-Worker]**, a person of suitable age and discretion. Said premises is plaintiff's actual place of business within the state.

Within 20 days of such delivery, deponent mailed a copy of same by first class mail in a postpaid  envelope properly addressed to plaintiff at plaintiff's actual place of business at **7901 Strickland Rd, Suite 108, Raleigh, NC 27615**. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the plaintiff.

Mailed Copy on 12/16/2019

**c/o Mission Coal Funding, LLC**

<u>Description of Person Served:</u>
Gender: Male
Skin:  White
Hair: Black
Age: 51 - 65 Yrs.
Height: 6' 0"
Weight:Over 200 Lbs.
Other:

MILITARY SERVICE:  Upon information and belief based upon the conversation(s) and observation(s) as aforesaid deponent avers that the plaintiff is not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act.

Sworn to before me this 18th
day of December, 2019

*Laura A Berry*
NOTARY PUBLIC

LAURA A BERRY
Notary Public
Johnston County, North Carolina
My Commission Expires
November 7, 2023

_____
Glenn Lee

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279
New York City Dept. of Consumer Affairs License No. 0761160

1 of 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

**PERELLA WEINBERG PARTNERS LP,**

INDEX NUMBER: 657326/2019

**VS**

*Plaintiff*

**MISSION COAL FUNDING, LLC, JASON R. MCCOY, and KEN MCCOY,**

*Defendant*

## AFFIDAVIT OF SERVICE

State of North Carolina }
County of Wake }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of North Carolina,

That on **12/16/2019** at 9:31 AM at 7901 Strickland Rd, Suite 108, Raleigh, NC 27615

deponent served a(n) **Notice of Electronic Filing and Summons with Notice**

on **Ken McCoy**

by delivering thereat a true copy of each to **Gregory Inggs  [Co-Worker]**, a person of suitable age and discretion. Said premises is defendant's actual place of business within the state.

Within 20 days of such delivery, deponent mailed a copy of same by first class mail in a postpaid envelope properly addressed to defendant at defendant's actual place of business at **7901 Strickland Rd, Suite 108, Raleigh, NC 27615**. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

Mailed Copy on **12/16/2019**

**c/o Mission Coal Funding, LLC**

Description of Person Served:
Gender: Male
Skin:  White
Hair:  Black
Age: 51 - 65 Yrs.
Height: 6' 0"
Weight:Over 200 Lbs.
Other:

MILITARY SERVICE:  Upon information and belief based upon the conversation(s) and observation(s) as aforesaid deponent avers that the defendant is not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act.

Sworn to before me this 18th
day of December, 2019

NOTARY PUBLIC

LAURA A BERRY
Notary Public
Johnston County, North Carolina
My Commission Expires
November 7, 2023

Glenn Lee

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279
New York City Dept. of Consumer Affairs License No. 0761160

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PERELLA WEINBERG PARTNERS LP,

INDEX NUMBER: 657326/2019

vs

*Plaintiff*

MISSION COAL FUNDING, LLC, JASON R. MCCOY, and KEN MCCOY,

*Defendant*

# AFFIDAVIT OF SERVICE

State of North Carolina }
County of Wake } ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of North Carolina,

That on **12/16/2019** at **9:31 AM** at **7901 Strickland Rd, Suite 108, Raleigh, NC 27615**

deponent served a(n) **Notice of Electronic Filing and Summons with Notice**

on **Mission Coal Funding, LLC**, a domestic limited liability company,

by delivering thereat a true copy of each to **Gregory Inggs** personally,

deponent knew said limited liability company so served to be the limited liability company described in said documents as said defendant and knew said individual to be **authorized by Jason R. McCoy via telephone to accept service** thereof.

Description of Person Served:
Gender : Male
Skin : White
Hair : Black
Age : 51 - 65 Yrs.
Height : 6' 0"
Weight : Over 200 Lbs.
Other :

Sworn to before me this 18ᵗʰ
day of December, 2019

*Laura A Berry*

NOTARY PUBLIC

LAURA A BERRY
Notary Public
Johnston County, North Carolina
My Commission Expires
November 7, 2023

*Glenn Lee*

Glenn Lee

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279
New York City Dept. of Consumer Affairs License No. 0761160

1 of 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

PERELLA WEINBERG PARTNERS LP,

       *Plaintiff*,

   v.                                   Index No. 657326/2019

MISSION COAL FUNDING, LLC, JASON R.
MCCOY, & KEN MCCOY.,

       *Defendants*.

## NOTICE OF APPEARANCE & DEMAND

       PLEASE TAKE NOTICE THAT the Defendants Mission Coal Funding, LLC, Jason R.

McCoy, and Ken McCoy, by and through their undersigned counsel, hereby appear in this action

and demand that you serve a copy of the complaint and all notices and other papers in this action

upon the Defendants' counsel at the address stated below.

Dated: January 22, 2020         */s/ Jonathan J. Brennan*
                           Jonathan J. Brennan
                           Richard J. Davis
                           **MAYNARD, COOPER & GALE, P.C.**
                           The Fred F. French Building
                           551 Fifth Avenue, Suite 2000
                           New York, New York 10176
                           (646) 609-9299
                           jbrennan@maynardcooper.com
                           rdavis@maynardcooper.com
                           *Attorneys for Defendants*

TO:    Christopher D. Belelieu, Esq.
       Demetri Brumis Blaisdell, Esq.
       **BOIES SCHILLER FLEXNER LLP**
       55 Hudson Yards,
       New York, New York 10001
       (212) 446-2300
       cbelelieu@bsfllp.com
       dblaisdell@bsfllp.com
       *Attorneys for Plaintiff, Perella Weinberg Partners LP*

05225630.2

Case 1:20-cv-01848-GBD   Document 2-1   Filed 03/02/20   Page 10 of 46

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PERELLA WEINBERG PARTNERS LP,

        Plaintiff,

        v.

MISSION COAL FUNDING, LLC, JASON R.
MCCOY, and KEN MCCOY,

        Defendants.

Index No. 657326/2019

**COMPLAINT**

       Plaintiff Perella Weinberg Partners LP ("Plaintiff" or "PWP") by and through its undersigned counsel, brings this action against Defendants Mission Coal Funding, LLC ("MCF"), Jason R. McCoy, and Ken McCoy (collectively, "Defendants"), and complains and alleges as follows:

## NATURE OF ACTION

       1.     This action arises out of Defendants' ongoing failure to pay fees and expenses that they owe, jointly and severally, to PWP under the clear terms of an October 1, 2018 engagement letter (the "Engagement Letter," attached hereto as Exhibit A) between MCF, Jason R. McCoy, and Ken McCoy, on the one hand, and PWP, on the other hand.

       2.     In January 2018, MCF loaned Mission Coal Company, LLC ("Mission Coal") approximately $62 million as part of a restructuring of prior debt.  On October 14, 2018, Mission Coal filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Alabama.  Shortly before Mission Coal declared bankruptcy, MCF retained PWP, a leading financial advisory firm, to provide financial advisory services to MCF in its negotiations as a creditor of the distressed company.  Defendants fully understood the challenges associated with achieving a recovery on their claims against Mission Coal.

3.      Under the terms of the Engagement Letter (signed by each of MCF's members) memorializing MCF's retention of PWP, MCF agreed to pay PWP certain fees and expenses, including monthly fees, expense reimbursement and a minimum fee for the engagement. Specifically, with respect to the minimum fee, MCF agreed to pay PWP a minimum of a million dollars for the engagement, regardless of the outcome of the Mission Coal Chapter 11 process and any potential recovery to MCF (the "Minimum Fee"). In addition, Defendants Jason R. McCoy and Ken McCoy personally guaranteed the payment of PWP's fees and expenses.

4.      In agreeing to take MCF on as a client, PWP relied heavily upon the terms of the Engagement Letter, including the monthly fees, expense reimbursement and the Minimum Fee.

5.      PWP performed the work requested by Defendants, providing financial advisory services to MCF from October 2018 until April 2019. During that time, PWP sent six invoices to Defendants. Defendants did not object to any of the invoices. In fact, Defendants made one payment to PWP for $75,000. Defendants, however, have failed to pay PWP the outstanding balance of $930,832 in fees and expenses that has been due for over nine months now.

6.      From April 2019 until the present, PWP has repeatedly sought payment from Defendants of the outstanding $930,832 in fees and expenses. Defendants, however, have refused to pay. PWP therefore brings this action to recover what it is owed under the clear and unambiguous terms of the Engagement Letter.

7.      PWP seeks (i) damages in an amount to be determined at trial, but in no event less than $930,832; (ii) punitive and/or exemplary damages; (iii) pre-judgment and post-judgment interest at the maximum rate allowable by law; (iv) the reasonable costs and expenses incurred in this action, including, attorneys' fees and costs; and (v) such other or further relief as the Court deems just and proper.

## PARTIES

8.      Plaintiff Perella Weinberg Partners LP is a financial advisory services firm organized under the laws of Delaware with its principal place of business located at 767 Fifth Avenue, New York, NY 10153.

9.      Defendant Mission Coal Funding, LLC is a Delaware limited liability company, with its principal place of business at 7901 Strickland Road, Suite 108, Raleigh, NC 27615.

10.     Defendant Jason R. McCoy is a resident of the state of North Carolina.

11.     Defendant Ken McCoy is a resident of the state of North Carolina.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendants because this action arises from Defendants' breaches of the Engagement Letter.  Under the terms of the Engagement Letter, Defendants irrevocably agreed to the jurisdiction of "any New York state or federal court sitting in the Borough of Manhattan of the City of New York" for "[a]ll actions and proceedings arising out of or relating to" the Engagement Letter.  (Ex. A, Engagement Letter ¶ 12.)

13.     This Court also has personal jurisdiction over Defendants pursuant to CPLR 302 because Defendants regularly transact business in New York and derive substantial revenue from interstate or international commerce.

14.     Plaintiff designates the County of New York as the venue for this action.  The basis for this designation is the Engagement Letter which provides that all actions and proceedings arising out of, or relating to, the Engagement Letter shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York.  Venue is also proper in the County of New York pursuant to CPLR 503 because it is the county in which a substantial part of the events or omissions giving rise to the

3

claims occurred.

## **FACTUAL ALLEGATIONS**

MCF Retains PWP to Provide Financial Advisory Services

15.     Mission Coal was formed in January 2018.  Mission Coal operated three mines in West Virginia and one in Alabama.  The company was created as a result of the consolidation of several coal businesses that had gone bankrupt.  Defendants Jason R. McCoy and Ken McCoy owned large interests in Mission Coal.

16.     On January 31, 2018, MCF made a loan of approximately $62 million dollars to Mission Coal as part of a restructuring of prior debt.

17.     By mid-2018, however, Mission Coal faced financial challenges, including potential bankruptcy.  For example, according to court filings, Mission Coal spent about $28 million upgrading its facilities, but could not generate sufficient cash to pay its obligations.

18.     Aware that it would likely become a creditor in Mission Coal's impending bankruptcy, MCF retained PWP on October 1, 2018 to provide MCF with financial advisory services.

19.     PWP is one of the country's leading financial advisory firms with significant experience and expertise advising stakeholders in high-complexity turnaround, distressed, and bankruptcy situations, with a multi-dimensional approach that generates optimal outcomes for all stakeholders.

PWP and MCF Enter into the Engagement Letter

20.     On October 1, 2018, PWP and MCF signed the Engagement Letter pursuant to which PWP agreed to provide financial advisory services to MCF.  Each of MCF's members—*i.e.*, Ken McCoy, Jason R. McCoy, Charles Ebetino, Mark Bartkoski and Robert McAtee—

4

signed the Engagement Letter on behalf of MCF.

21.     Under the terms of the Engagement Letter, PWP agreed to provide the following services "if requested by" MCF:

a.     General Financial Advisory and Investment Banking Services, including reviewing and analyzing Mission Coal's business, operations, liquidity situation, assets and liabilities, financial condition and prospects;

b.     Restructuring Services, including analyzing restructuring scenarios and providing advice and assistance in negotiations related to a potential restructuring;

c.     Sale Services, including providing advice and assisting in the executing of a potential sale of Mission Coal; and

d.     Financing Services, including identifying, contacting and soliciting investors, and assisting in the arranging of financing. (Ex. A, Engagement Letter ¶ 1.)

22.     MCF agreed to compensate PWP (i) $100,000 dollars per month (the "Monthly Advisory Fee") from December 15, 2018 onward, plus (ii) a portion of any recoveries to MCF upon the consummation of a Transaction—*i.e.*, a restructuring sale or financing (the "Transaction Fee"), and (iii) a fee for any investments or financing that PWP sourced (the "Financing Fee"). (*Id.* ¶¶ 2(a)-(c).)

23.     In the event that the Monthly Advisory Fee, Transaction Fee, and Financing Fee totaled less than $1 million, MCF agreed that it would pay the difference between (i) the total of the Monthly Advisory Fee, the Transaction Fee, and the Financing Fee, and (ii) $1 million (the "Minimum Fee"). (*Id.* ¶ 2(d).) In other words, MCF agreed to pay PWP a minimum fee of $1 million regardless of the work that PWP performed under the terms of the Engagement Letter

and regardless of the outcome to MCF.

24.     The Engagement Letter also provides that MCF would "promptly reimburse [PWP] for all of [its] expenses" and the obligation survives the completion or termination of the Engagement.  (*Id.* ¶ 3.)

25.     The Minimum Fee, along with the Monthly Advisory Fee and expense reimbursement, were critical terms of the Engagement Letter that PWP relied upon in agreeing to undertake the engagement for Defendants.

26.     Defendants acknowledged that PWP's fees, including the Minimum Fee, were reasonable and fair.  Specifically, the Engagement Letter provides:

> The Client acknowledges that in light of our experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by us in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the market rate for professionals of our stature in the restructuring market generally, ***the Fees are just and reasonable*** and fairly compensates us for our services performed hereunder.

(*Id.* ¶ 4, at 6 (emphasis added).)

27.     Defendants also agreed that PWP's "restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of our Engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Client[] of [PWP's] services hereunder could not be measured merely by reference to the number of hours to be expended by our professionals in the performance of such services."  (*Id.* ¶ 6.) Defendants further agreed that "all of the fee arrangements specified herein are commercially reasonable."  (*Id.*)

28.     Under the Engagement Letter, invoices are "due upon presentation."  (*Id.* ¶ 4.)

Defendants further agreed to "pay the Expenses and the Fees within five business days of receiving any of [PWP's] invoices (if applicable) or being notified by Perella Weinberg Partners that Fees are due." (*Id.*)

29.    All three Defendants—*i.e.*, MCF, Jason R. McCoy, and Ken McCoy—agreed in the Engagement Letter to "absolutely, unconditionally and irrevocably guarantee, jointly and severally, as primary obligors and not as sureties, the due and punctual payment when due of all fees, charges and disbursements of Perella Weinberg Partners, and any and all other liabilities, obligations, covenants, and duties of the undersigned owing to Perella Weinberg Partners arising under this Agreement or otherwise, whether due or to become due . . . ." (*Id.*)

30.    Defendants Jason McCoy and Ken McCoy both signed the Engagement Letter on behalf of MCF and separately signed the Engagement Letter "[a]s to the guarantee." (*Id.* at 12.)

31.    Defendants also agreed to pay all of PWP's attorneys' fees and cost in enforcing the terms of the Engagement Letter.  Specifically, the Engagement Letter provides that Defendants agree "to pay any and all expenses (including the fees, charges and disbursements of counsel of Perella Weinberg Partners) incurred by Perella Weinberg Partners in enforcing any rights under this Agreement." (*Id.* ¶ 4.)

32.    The Engagement Letter is "governed by and construed in accordance with the laws of the State of New York." (*Id.* ¶ 12.)

<u>PWP Performs under the Engagement Letter and Invoices Defendants</u>

33.    On or around October 14, 2018, Mission Coal filed for Chapter 11 bankruptcy protection listing about $175 million in debt (including the debt owed to MCF) with just $55,000 in cash on hand.

34.    From approximately October 1, 2018 until April 2019, the month Mission Coal

emerged from its Chapter 11 bankruptcy process, PWP provided MCF with advisory services.

35.     Among other things, PWP assisted MCF with the following during the engagement:

>    a.     Evaluating strategy and approach regarding other lenders and Mission Coal in order to maximize value;

>    b.     Developing a potential credit bid for Mission Coal;

>    c.     Negotiating with Mission Coal and other lenders;

>    d.     Evaluating Mission Coal's liquidity projections; and

>    e.     Identifying, contacting and negotiating with potential investment partners for a credit bid.

36.     During this period, PWP did all advisory work that MCF requested. Yet Defendants did not pay PWP what it is owed under the clear terms of the Engagement Letter.

37.     PWP invoiced MCF monthly for the services that it performed, as set forth in the chart below (together, the "Invoices," attached hereto as Exhibit B):

| Invoice Date | Amount |
|---|---|
| December 20, 2018 | $50,000 |
| January 4, 2019 | $105,788 |
| February 1, 2019 | $100,000 |
| March 4, 2019 | $100,000 |
| April 10, 2019 | $100,044 |
| April 29, 2019 | $475,000 |

38.     All invoices were sent to MCF, attention to Defendants Jason R. McCoy and Ken McCoy.

39.    The first five Invoices were for four and a half months of the Monthly Advisory Fee, or $450,000, and $5,832 in reimbursable expenses incurred by PWP.

40.    On February 4, 2019, MCF made a $75,000 payment to PWP.

41.    The final Invoice, issued on April 29, 2019, was for $475,000.  The $475,000 reflected (i) $550,000 to bring the total fees up to the Minimum Fee of $1 million (in accordance with Paragraph 2(d) of the Engagement Letter), (ii) less the $75,000 payment that MCF had made on February 4, 2019.

42.    Defendants accepted the Invoices and never disputed the amounts or that PWP performed all services that it agreed to perform under the Engagement Letter.

43.    As of the final Invoice dated April 29, 2019, PWP has invoiced MCF for $930,832 in unpaid fees and expenses.

PWP Seeks to Collect the Unpaid Fees and Expenses from Defendants

44.    Between April 29, 2019 and the start of this action, PWP repeatedly sought to collect its unpaid fees and expenses.

45.    For example, on November 15, 2019, PWP sent a demand letter to all three Defendants, demanding payment of the $930,832 in outstanding fees and expenses.   PWP requested that the outstanding fees and expenses be paid by November 29, 2019.  Defendants did not pay any of the fees or expenses.

46.    Other than the February 4, 2019 payment of $75,000, Defendants have not made any other payments to PWP.

47.    PWP has also incurred significant expenses, including attorneys' fees and costs, associated with enforcing the clear terms of the Engagement Letter, including bringing this action.

9

## FIRST CAUSE OF ACTION
### (Breach of Contract against all Defendants)

48.     PWP realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 47 above.

49.     The Engagement Letter is a fully executed, valid contract between PWP and Defendants.

50.     PWP has fully performed its obligations under the Engagement Letter and is entitled to payment.

51.     PWP has also incurred additional costs and fees in enforcing its rights under the Engagement Letter.

52.     Defendant MCF breached the Engagement Letter by failing to pay for PWP's services, reimburseable expenses, and the expenses PWP incurred in enforcing its rights under the Engagement Letter.

53.     Defendants Jason R. McCoy and Ken McCoy breached the Engagement Letter by failing to fulfill their absolute, unconditional and irrevocable guarantee to pay the due and outstanding fees and expenses that are owed to PWP under the Engagement Letter.

54.     As a direct and proximate result of Defendants' breaches of the Engagement Letter, PWP has suffered and will continue to suffer additional damages flowing from Defendants' breaches, in the form of the unpaid fees, reimburseable expenses, and attorneys' fees and costs related to this action, in an amount to be proven at trial but no less than $930,832.

## SECOND CAUSE OF ACTION
### (Account Stated against all Defendants)

55.     PWP realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 54 above.

56.     PWP invoiced Defendants for a total of $1,005,832, of which $930,832 remains unpaid.

57.     The Invoices were rendered as part of a contractual relationship pursuant to which MCF had an obligation to pay PWP.

58.     All the Invoices were presented to all Defendants, who accepted them as correct.

59.     Defendants made a payment of $75,000 on February 4, 2019, demonstrating that they accepted their obligation to pay and the correctness of the Invoices that PWP sent them.

60.     Defendants did not object to any of the Invoices when they were presented to Defendants.

61.     By entering into the Engagement Letter and accepting the Invoices without objection, Defendants promised to pay the full amount stated, of which $930,832 remains unpaid.

## **PRAYER FOR RELIEF**

WHEREFORE, PWP respectfully requests that the Court:

A.     Enter judgment awarding PWP damages no less than $930,832 for all injury resulting from Defendants' breaches of their obligations under the Engagement Letter;

B.     For pre-judgment and post-judgment interest accrued on sums owed to PWP;

C.     Enter judgment awarding PWP its attorneys' fees, disbursements, and costs in connection with this action; and

D.     Grant to PWP such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 11, 2020

                             *_/s/ Christopher D. Belelieu_____*
                             Christopher D. Belelieu
                             Demetri Brumis Blaisdell
                             BOIES SCHILLER FLEXNER LLP
                             55 Hudson Yards
                             New York, NY 10001
                             Tel:  (212) 446-2300
                             Fax:  (212) 446-2350
                             Email:  cbelelieu@bsfllp.com
                                         dblaisdell@bsfllp.com

                             *Attorneys for Plaintiff*
                             *Perella Weinberg Partners LP*

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 02/11/2020 06:06 PM
NYSCEF DOC. NO. Case 1:20-cv-01848-GBD   Document 2-1   Filed 03/02/20   Page 23 of 46 NYSCEF: 02/11/2020

INDEX NO. 657326/2019

**P / W / P**
/ PERELLA WEINBERG
/ PARTNERS

767 Fifth Avenue
New York, NY 10153

T  212.287.3200
F  212.287.3201
pwpartners.com

October 1, 2018

Mission Coal Funding, LLC
6801 Falls of Neuse RD, Suite 100
Raleigh, NC 27615

Attention:  Jason R. McCoy and Ken McCoy, Members

Dear Jason and Ken:

This letter agreement ("Agreement") confirms the terms under which Perella Weinberg Partners LP (together with its affiliates, "Perella Weinberg Partners," "we" or "us") will provide financial advisory services to Mission Coal Funding, LLC, a Delaware limited liability company ("MCF", "you", or "Client"), which holds certain securities (the "Securities") of Mission Coal Company, LLC, Seminole Coal Resources, LLC and Seneca Coal Resources, LLC, a subsidiary of Mission Coal Company, LLC ("Mission" collectively and together with its subsidiaries, the "Company") and Jason R. McCoy and Ken McCoy as individuals (the "Guarantors").

We have been retained on behalf of, and will report solely to, the Client, notwithstanding that our fees and expenses may be paid by the Company.  Certain covenants and representations are made by you  herein.  The matters referred to in this letter constitute our "Engagement."  This Agreement shall be effective as of October 1, 2018 ("Engagement Date").

1.      Services to be Rendered.  If requested by you, we shall perform the following financial advisory services:

*General Financial Advisory and Investment Banking Services.*  To the extent requested by you, we shall:

(a)     Familiarize ourselves with the business, operations, liquidity situation, assets and liabilities, financial condition and prospects of the Company;

(b)     Review, analyze and report to you with respect to the Company's financial condition and outlook;

(c)     Evaluate the Company's debt capacity in light of its projected cash flows;

(d)     Review and provide an analysis of any valuation of the Company or its assets;

(e)     Review and provide an analysis of any proposed capital structure for the Company;

(f)     Advise and attend meetings with you related to the Company as well as due diligence meetings with the Company or other third parties as appropriate;

(g)     Advise and assist your evaluation of the Company's near-term liquidity including various financing alternatives;

(h)     Review, analyze and advise you with respect to the existing debt structure of the Company, and refinancing alternatives to its existing debt;

(i)     Explore alternative strategies for the Company as a stand-alone business; and

(j)     Provide such other financial advisory services in connection with this matter as you may from time to time reasonably request and which are customarily provided by financial advisors in similar situations.

*Restructuring Services.*  To the extent requested by you, we shall:

(a)     Analyze various Restructuring (as defined below) scenarios and the potential impact of these scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring;

(b)     Provide strategic advice to you with regard to restructuring or refinancing the Company's obligations;

(c)     Provide financial advice and assistance to you in negotiating a Restructuring;

(d)     In connection therewith, provide financial advice and assistance to you in the structure of any new securities to be issued by the Company under a Restructuring; and

(e)     Assist you and/or participate in negotiations with the Company or entities or groups affected by the Restructuring.

For purposes of this Agreement, the term "Restructuring" means any recapitalization, modification or restructuring of the Company's equity and/or debt securities and/or other indebtedness, obligations or liabilities (including partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to any repurchase, exchange, conversion, cancellation, forgiveness, retirement, plan, solicitation of consents, waivers, acceptances, authorizations and/or a modification or amendment to the terms, conditions or covenants thereof.

*Sale Services.*  To the extent requested by you, we shall:

       (a)     Provide financial advice to you in evaluating, negotiating and effecting a Sale (as defined below); and

       (b)     Assist in the arranging and executing a Sale, including assisting in the due diligence process and negotiating the terms of any proposed Sale, as requested.

For purposes of this Agreement, the term "Sale" shall mean the disposition in one or a series of related transactions (i) of all or a significant portion of the equity securities of the Company by the security holders of the Company or (ii) of all or a significant portion of the assets or businesses of the Company or its subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, the formation of a joint venture, partnership or similar entity, or any similar transaction (other than a Restructuring) including through a sale pursuant to Section 363 of the Bankruptcy Code.

*Financing Services.* To the extent requested by you, we shall:

       (c)     Provide financial advice to you in structuring and effecting a Financing (as defined below), identify potential Investors (as defined below) and, at your request, contact and solicit such Investors; and

       (d)     Assist in the arranging of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing, as requested.

For purposes of this Agreement, the term "Financing" shall mean a private issuance, sale or placement of the equity or equity-linked or debt securities, instruments or obligations of the Company or to facilitate the acquisition of the Company with one or more lenders and/or investors, or any loan or other financing, or a rights offering, in each case, where we arrange such; provided, however, that (x) Client and Guarantors acknowledge that we are the sole financial advisors representing Client and any Financing sourced by or for Client or Guarantors shall be deemed to be sourced by us and (y) any such financing must be approved by you.

It is understood that nothing contained herein shall constitute an express or implied commitment by us to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

As used herein, the term "Transaction" means any of a Restructuring, Sale or Financing.

Notwithstanding anything contained in this Agreement to the contrary, we shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity or to provide any fairness, valuation or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities

of the Company or any other party. We make no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Transaction. We are retained under this Agreement solely to provide advice and services regarding the transactions contemplated by this Agreement. Our Engagement does not encompass providing "crises management."

The advisory services and compensation arrangements set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by us at the request of you, as the case may be, or any other specific services not set forth in this Agreement. As additional unique structures or transactions are proposed that are not contemplated by this letter, including but not limited to any sale of all or substantially all of the business, capital stock or assets of Company in which the Client and/or Guarantors participate as seller, the parties hereto will work together in good faith to equitably adjust the compensation payable to Perella Weinberg Partners in order to approximate, as closely as possible, the compensation that would have been payable to Perella Weinberg Partners hereunder (taking into account the ultimate benefit to you of such alternative transaction and structure (including the timing, execution risks and complexity thereof). The terms and conditions of such investment banking services, including compensation and arrangements, would be set forth in a separate written agreement between us and you, as the case may be.

2. <u>Compensation</u>. As compensation for our services, the Client agrees to pay us in cash, by wire transfer of immediately available funds when due, the following fees (individually or collectively, "<u>Fees</u>"):

(a) <u>Monthly Advisory Fee</u>. A monthly financial advisory fee of $100,000 for each month of the Engagement, prorated for any partial month, due and payable in advance ("Monthly Advisory Fees"), with the first cash Monthly Advisory Fee due and payable ~~November 1, 2018~~ December 15, 2018; plus

(b) <u>Transaction Fee</u>. A transaction fee (the "<u>Transaction Fee</u>") comprised of 5.5% of the total recoveries to MCF whether in the form of cash, equity securities, debt securities or other consideration ("Recoveries") payable in cash promptly upon consummation of a Transaction; provided, however, that the Transaction Fee shall not exceed $6,870,000; plus

(c) <u>Financing Fee</u>. A Financing Fee (the "<u>Financing Fee</u>") of (i) in the case of any equity or equity-linked securities, the greater of $400,000 and 5.0% of the amount raised if we source the Financing, (ii) in the case of any debt securities raised in connection with a Transaction, the greater of $400,000 and 2.5% of the amount raised if we source the Financing, in each case payable promptly upon consummation of any such Financing(s); provided, however, that if MCF participates in any such Financing by funding new capital in the form of cash into the Financing, then the Financing Fee related to the portion of new capital funded by MCF shall be 2.5% for equity or equity-linked securities and 1.25% for debt securities; and provided, further, that for the avoidance of doubt, (x) the Client and Guarantors acknowledge that we are the sole financial advisor representing

the Client and that any Financing sourced by or for the Client in this matter shall be deemed to be sourced by us (y) any such financing must be approved by you and (z) mere participation by a financial sponsor together with MCF in a bid to acquire the Company shall not be deemed a Financing unless PWP has run, at your request, a financing process; plus

       (d)    If the sum of the total Monthly Advisory Fees, Transaction Fees and Financing Fees ("Total Fees") is less than $1,000,000, an amount of the difference between $1,000,000 and Total Fees.

       3.    <u>Expenses</u>.  In addition to our Fees for professional services, the Client agrees that it will promptly reimburse us for all of our expenses ("<u>Expenses</u>"), including, but not limited to, professional and legal fees, charges and disbursements of our legal counsel, any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in this letter, travel and hotel expenses, printing costs, data processing and communication charges, research expenses and courier and postage services.  The Client's obligation to reimburse Expenses incurred by us in connection with the Engagement will survive the completion or termination of the Engagement.

       4.    <u>Payment</u>.  The Fees shall be remitted to us without the need for presentation of invoices.  We will present a monthly invoice for Expenses, which invoice is due upon presentation.  The Client is responsible for paying the Fees and Expenses, and the Fees and Expenses are the exclusive obligations of the Client.  The Client agrees to pay the Expenses and the Fees within five business days of receiving any of our invoices (if applicable) or being notified by Perella Weinberg Partners that Fees are due.  We reserve the right to halt further services until payment in full is received.  We must be paid in full for all work performed to date.

       The undersigned hereby absolutely, unconditionally and irrevocably guarantee, jointly and severally, as primary obligors and not as sureties, the due and punctual payment when due of all fees, charges and disbursements of Perella Weinberg Partners, and any and all other liabilities, obligations, covenants, and duties of the undersigned owing to Perella Weinberg Partners arising under this Agreement or otherwise, whether due or to become due, now existing or hereafter arising, that are incurred in connection with this engagement, and agree to pay any and all expenses (including the fees, charges and disbursements of counsel of Perella Weinberg Partners) incurred by Perella Weinberg Partners in enforcing any rights under this Agreement.  The undersigned will countersign this engagement letter memorializing such agreement. Further, the undersigned hereby unconditionally and irrevocably waive, to the extent permitted by applicable law, promptness, diligence, notice of acceptance, presentment, demand for performance, notice of nonperformance, default, acceleration, protest or dishonor and any other notice with respect to the obligations guaranteed hereunder. This Agreement is a present and continuing, absolute and unconditional guarantee of payment when due, and not of collection.  You have consented to Perella Weinberg Partners potentially accepting compensation from the undersigned for representing you.

       The Client agrees it shall seek to have the Company assume the obligations for the payment of all of our Fees pursuant to Section 2 and Expenses pursuant to Section 3, subject to any applicable bankruptcy or state law limitations

The Client acknowledges that in light of our experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by us in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the market rate for professionals of our stature in the restructuring market generally, the Fees are just and reasonable and fairly compensates us for our services performed hereunder.

5. <u>Indemnification</u>. The Client acknowledges that we have been retained hereunder solely as an independent contractor and that nothing in this Agreement or the nature of our services shall be deemed to create a fiduciary or agency relationship between us and any of the Client or its equity holder(s), employees or creditors. In order to induce us to accept the Engagement, the Client agrees to the indemnity, exculpation provisions and other matters set forth in Annex A, which forms a part of and is incorporated by reference into the Agreement. Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations the Client set forth in Annex A, the Client will notify us in writing thereof (if not previously so notified) and, if requested by us, shall arrange in connection therewith alternative means of providing for the obligations of the Client set forth in Annex A, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case, in an amount and upon terms and conditions reasonably satisfactory to us and the Client. The terms and provisions of this paragraph 5 and of Annex A shall survive the completion or termination of the Engagement.

6. <u>Expertise</u>. The Client acknowledges and agrees that Perella Weinberg Partners' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of our Engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Client) of our services hereunder could not be measured merely by reference to the number of hours to be expended by our professionals in the performance of such services. the Client also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of us and our professionals hereunder over the life of the Engagement, and in light of the fact that such commitment may foreclose other opportunities for us and that the actual time and commitment required of us and our professionals to perform their services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which we may be required to address in the performance of our services hereunder, our commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for our services for engagements of this nature in an out-of-court context, the Client agrees that all of the fee arrangements specified herein are commercially reasonable.

7. <u>Information; Cooperation</u>. In connection with the Engagement, the Client will facilitate access to the Company's officers, directors, employees, accountants, legal advisors, and other representatives (collectively, "<u>Representatives</u>"), and will furnish us and cause the Representatives to furnish us with such information as we believe appropriate for the

Engagement (all such information so furnished being the "Information"). The Client recognizes and confirm that we (i) will use and rely primarily on the Information and on information available from generally recognized public sources in performing its services without having independently verified the same and (ii) do not assume responsibility for the accuracy or completeness of the Information and such other information. The information furnished by the Client and the Company and its Representatives, when delivered, will be to the best knowledge of the Client, true and correct in all material respects and, to the best knowledge of the Client, will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. the Client will promptly notify us if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to us.

8.      Work Product. All documents, materials or information of any kind created by us in connection with the Engagement, including, without limitation, any written reports, memoranda, analyses, work papers or status summaries, whether or not delivered to the Client, are work product (collectively, "Work Product"). All Work Product shall be owned and maintained by us. You agree not to use any Work Product except in connection with any transaction contemplated by this Agreement or otherwise within the scope of the Engagement, and not for any other purpose. Our Work Product may not be relied upon by any other person including, but not limited to, you, any security holder, including the Client or any of their employees or creditors, or the Guarantors and may not be used or relied upon for any other purpose. The Client and the Guarantors may not publicly disclose, summarize, excerpt from or otherwise refer to any Work Product rendered by us, whether formal or informal, without our prior written consent.

9.      Confidentiality. The Client may not publicly disclose, summarize, excerpt from or otherwise refer to any advice rendered by us, whether formal or informal, without our prior written consent. In addition, the Client may not refer to our name or the terms of our Engagement without our prior written consent. the Client's obligations under this section will survive the completion or termination of the Engagement.

We will not be providing the Client with, and the Client will not look to us for, tax, legal, accounting or other similar advice and we agree that nothing in this Agreement is intended to impose any conditions of confidentiality within the meaning of Section 6111 of the Internal Revenue Code of 1986, as amended, or US Treasury Regulation Section 1.6011-4. The Client may disclose to any and all persons, without limitation of any kind, the United States tax treatment (federal, state and local) and tax structure of any transaction and all materials of any kind relating to such tax treatment and tax structure.

10.      Termination. Our services hereunder may be terminated upon 30 days written notice with or without cause by you or by us at any time and without liability or continuing obligation to you or to us. No termination of our Engagement or this Agreement shall modify or affect (i) the Client's and/or Guarantors' obligations to pay the Fees and to pay or reimburse Expenses through the effective date of termination under Sections 2 and 3 of this Agreement, respectively, and (ii) the obligations under paragraphs 4, 5, 6, 9, 10, 11, 12, 13, 15, 16, 17 and 18, all of which shall survive the termination of our Engagement; provided, however, that in the case of termination by you, we shall be entitled to be paid the full amount of our Fees

7

if, during the term or within two years of such termination, (x) any Transaction is effected by the Company, or (y) the Company agrees to a Transaction which is subsequently effected, at any time.

11. Other Perella Weinberg Partners Activities. Perella Weinberg Partners is a financial services firm engaged directly and through its affiliates in investment banking, financial advisory services, investment management, asset management and other advisory services and sponsors special purpose acquisition vehicles. The Client understands and acknowledges that in performing the Engagement we will not be under any duty to disclose to the Client or the Company, or use for the benefit of the Client or the Company, any confidential or non-public information obtained by us or our affiliates in the course of providing services to any other person or engaging in any other transaction (including as principal) or business activities. In the ordinary course of business activities, Perella Weinberg Partners LP or its affiliates or their respective personnel may at any time hold long or short positions, and may trade or otherwise effect transactions, for its or their own accounts or the accounts of customers, in debt or equity or other securities (or related derivative securities) or financial instruments (including bank loans or other obligations) of the Company or any other party to a Transaction or any of their respective affiliates.

12. Governing Law. All aspects of the relationship created by this Agreement (including Annex A) shall be governed by and construed in accordance with the laws of the State of New York, applicable to agreements made and to be performed entirely in such State. All actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the Client hereby irrevocably submits. The Client hereby irrevocably waives any defense or objection to the New York forum designated above. We and the Client (on each of their own behalf and, to the extent permitted by law, on behalf of their equity holders) waives all right to trial by jury in any action, suit, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the Engagement or the performance by us of the services contemplated by this Agreement.

13. Assignment; Severability. No party hereto may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other parties, such consent not to be unreasonably withheld. In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable by a court of competent jurisdiction (not subject to further appeal), then the remainder of this Agreement shall not be affected, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

14. Public Announcements. The Client acknowledges that we may, at our option and expense and after public announcement of a Transaction, place announcements and advertisements or otherwise publicize such Transaction and our role in it on our internet website and in such financial and other newspapers and journals as we may choose, stating that we acted as financial advisor as provided hereunder.

15. Regulation Relating to Client Identification. Federal law and regulations require financial institutions to obtain, verify and record information that identifies each person

with whom they do business prior to doing such business and to provide reasonable notice to such persons that the financial institution is verifying such person's identity. Accordingly, the Client will provide us, as necessary and upon request, certain identifying information, including, but not limited to, a government-issued identification number (e.g., a U.S. taxpayer identification number) and certain other information or documents necessary to verify identity, such as certified corporate documentation, partnership agreement or trust instrument.

16. <u>Co-Advisors</u>. It is understood that no Indemnified Person, as defined herein in Annex A, shall have any responsibility or liability to the Client or its affiliates or any other party in connection with the advice, opinions or actions of any other advisors engaged by the Client, and further, no Indemnified Person or any such other advisor shall have any responsibility or liability to each other in connection with the advice or opinions rendered by such party in connection with the Engagement.

17. <u>Limitation on Actions</u>. No action, regardless of form, arising out of or relating to this Engagement, may be brought by the Client against us more than one year after the cause of action has accrued.

18. <u>Entire Agreement; Amendments</u>. This Agreement, including Annex A, constitutes the entire agreement between us and the Client with respect to the Engagement and supersedes all other oral and written representations, understandings or agreements relating to this Engagement. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

19. <u>Authorization</u>. The Client acknowledges its agreement with the terms set forth herein, and acknowledges that the Client has reviewed and agreed to be bound by the terms hereof, and that the Client has all requisite power and authority to enter into this letter agreement on behalf of itself, and has been duly and validly authorized to do so, as evidenced by the signatures affixed hereto. Facsimile and electronic signatures shall be deemed original, binding signatures.

[INTENTIONALLY LEFT BLANK – SIGNATURE PAGE FOLLOWS]

FILED: NEW YORK COUNTY CLERK 02/11/2020 06:06 PM
NYSCEF DOC. NO. Case 1:20-cv-01848-GBD   Document 2-1   Filed 03/02/20   Page 32 of 46

INDEX NO. 657326/2019
RECEIVED NYSCEF: 02/11/2020

We are delighted to accept the Engagement and look forward to working with you on this assignment. Please confirm your agreement to the foregoing by signing and returning to us the enclosed duplicate of this letter.

Very truly yours,

PERELLA WEINBERG PARTNERS LP

By: _____

Brennan Smith
Partner

PERELLA WEINBERG PARTNERS LP

By: _____
Kevin Cofsky
Partner

Agreed and Accepted as of
the Date set forth above:

MISSION COAL FUNDING, LLC

_____

Name:
Title:

As to the guarantee:

JASON R. MCCOY

_____

Title:

KEN MCCOY

_____

10

Agreed and Accepted as of
the Date set forth above:

MISSION COAL FUNDING, LLC

Name: Ken McCoy
Title:

MISSION COAL FUNDING, LLC

Name: Jason McCoy
Title:

MISSION COAL FUNDING, LLC

Name: Charles Ebetino
Title:    Member

*Executed only to authorize MCF engagement of PWP in lieu of Member Resolution ( No Individual Member Liability)*

MISSION COAL FUNDING, LLC

Name: Mark Bartkoski
Title:

*Executed only to authorize MCF Engagement of PWP in Lieu of Member Resolution ( No individual Liability)*

MISSION COAL FUNDING, LLC

Name: Robert McAtee
Title:

11

Agreed and Accepted as of
the Date set forth above:

MISSION COAL FUNDING, LLC

Name: Ken McCoy
Title:

MISSION COAL FUNDING, LLC

Name: Jason McCoy
Title:

MISSION COAL FUNDING, LLC

Name: Charles Ebetino
Title:

MISSION COAL FUNDING, LLC

Name: Mark Bartkoski
Title:

MISSION COAL FUNDING, LLC

Name: Robert McAtee
Title:

EXECUTED ONLY TO AUTHORIZE
MCF ENGAGEMENT OF PWP IN LIEU
OF MEMBER RESOLUTION
(NO INDIVIDUAL MEMBER LIABILITY)

As to the guarantee:

Name: Jason McCoy
Title:

Name: Ken McCoy
Title:

## Annex A

The Client agrees to indemnify and hold harmless Perella Weinberg Partners and its affiliates and its and their respective officers, directors, partners, members, employees, consultants and agents and each other person, if any, controlling Perella Weinberg Partners or any of its affiliates (Perella Weinberg Partners and each such other person being an "*Indemnified Person*") from and against any losses, claims, damages or liabilities related to, or arising out of or in connection with our engagement or any matter referred to in this letter (the "*Engagement*"), and will reimburse each Indemnified Person for all expenses (including fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party; provided, however, that the Client will not be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of any Indemnified Person.  The Client also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Client for or in connection with the Engagement, except for any such liability for losses, claims, damages or liabilities incurred by the Client that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Indemnified Person.

The Client, or any of its affiliates, will not, without Perella Weinberg Partners' prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification, reimbursement or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto), nor will the Client or any of its affiliates participate in or facilitate any such settlement, compromise, consent or termination on behalf of the Client's board of directors (or similar governing body) unless such settlement, compromise, consent or termination includes a full release of each Indemnified Person from any and all liabilities arising out of such action, claim, suit, investigation or proceeding.   No Indemnified Person seeking indemnification, reimbursement or contribution under this *Annex A* will, without the Client's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to in the preceding paragraph.

If the indemnification provided for in the first paragraph of this *Annex A* is, for any reason not available to an Indemnified Person or is insufficient to hold an Indemnified Person harmless in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, the Client shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (a) in such proportion as is appropriate to reflect the relative benefits to Perella Weinberg Partners, on the one hand, and the Client, on the other hand, of the Engagement or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of each of Perella Weinberg Partners and  the Client, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall Perella Weinberg Partners' aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by Perella Weinberg Partners under this letter.  For the purposes of this *Annex A*, the relative benefits to Perella Weinberg Partners and the Client of the Engagement shall be deemed to be in the same proportion as (i) the fees paid or to be paid to Perella Weinberg Partners under this letter, bears to (ii) the total value paid or contemplated to be paid to or received or contemplated to be received by the Client or its stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement, whether or not any such transaction is consummated. The indemnity, contribution, and other obligations and agreements of the Client set forth in this Annex A and the engagement letter to which it is attached  shall apply to any services provided by Perella Weinberg Partners in connection with this Engagement prior to the date hereof.

# EXHIBIT B



767 Fifth Avenue
New York, NY 10153

T  212.287.3200
F  212.287.3201
pwpartners.com

Date:    December 20, 2018
Invoice:    FRO-90685-01

Mission Coal Funding, LLC
6801 Falls of Neuse RD, Suite 100
Raleigh, NC 27615

Attention: Jason R. McCoy and Ken McCoy, Members

INVOICE

| **Description** | **Amount** |
|---|---|
| Monthly Retainer – December 15 – 31, 2018 | $ 50,000 |
| Total Amount Due | $ 50,000 |

*Payment due upon receipt*

*Please remit payment via wire transfer per the following instructions:*

**Bank:**            **Wells Fargo Bank NA**
**ABA:**             **121000248**
**Account #:**       **4369561329**
**Account Name:**    **Perella Weinberg Partners LP**
**Reference #:**     **FRO-90685-01**



767 Fifth Avenue
New York, NY 10153

T  212.287.3200
F  212.287.3201
pwpartners.com

Date:         January 04, 2019
Invoice:      FRO-90685-02

Mission Coal Funding, LLC
6801 Falls of Neuse RD, Suite 100
Raleigh, NC 27615

Attention:  Jason R. McCoy and Ken McCoy, Members

INVOICE

| **Description** | **Amount** |
|---|---|
| Monthly Retainer – January 2019 | $  100,000 |
| Expenses | 5,788 |
| Current Amount Due | 105,788 |
| | |
| Amount Outstanding: | |
| Inv# FRO-90685-01 dated December 20, 2018 | 50,000 |
| | |
| Total Amount Due | $  155,788 |

*Payment due upon receipt*

*Please remit payment via wire transfer per the following instructions:*

**Bank:**            **Wells Fargo Bank NA**
**ABA:**             **121000248**
**Account #:**       **4369561329**
**Account Name:**    **Perella Weinberg Partners LP**
**Reference #:**     **FRO-90685-02**

Partners have limited liability status



767 Fifth Avenue
New York, NY 10153

T  212.287.3200
F  212.287.3201
pwpartners.com

Date:  February 01, 2019
Invoice:  FRO-90685-03

Mission Coal Funding, LLC
6801 Falls of Neuse RD, Suite 100
Raleigh, NC 27615

Attention:  Jason R. McCoy and Ken McCoy, Members

INVOICE

| Description | Amount |
|---|---|
| Monthly Retainer – February 2019 | $ 100,000 |
| **Amount Outstanding:** | |
| Inv# FRO-90685-01 dated December 20, 2018 | 50,000 |
| INV# FRO-90685-02 dated January 04, 2019 | 105,788 |
| Total Amount Due | $255,788 |

*Payment due upon receipt*

*Please remit payment via wire transfer per the following instructions:*

**Bank:** **Wells Fargo Bank NA**
**ABA:** **121000248**
**Account #:** **4369561329**
**Account Name:** **Perella Weinberg Partners LP**
**Reference #:** **FRO-90685-03**



767 Fifth Avenue
New York, NY 10153

T  212.287.3200
F  212.287.3201
pwpartners.com

Date:        March 4, 2019
Invoice:     FRO-90685-04

Mission Coal Funding, LLC
6801 Falls of Neuse RD, Suite 100
Raleigh, NC 27615

Attention:  Jason R. McCoy and Ken McCoy, Members

Invoice

| **Description** | **Amount** |
| --- | --- |
| Monthly Retainer – March 2019 | $  100,000 |
| **Amount Outstanding:** | |
| Inv# FRO-90685-01 dated December 20, 2018 | 50,000 |
| Inv# FRO-90685-02 dated January 04, 2019 | 105,788 |
| Inv# FRO-90685-03 dated February 1, 2019 | 100,000 |

| | |
| --- | --- |
| Amount Due | $355,788 |
| Payment Received (February 4, 2019) | ( 75,000) |
| Current Amount Due | $280,788 |

*Payment due upon receipt*

*Please remit payment via wire transfer per the following instructions:*

| | |
| --- | --- |
| **Bank:** | **Wells Fargo Bank NA** |
| **ABA:** | **121000248** |
| **Account #:** | **4369561329** |
| **Account Name:** | **Perella Weinberg Partners LP** |
| **Reference #:** | **FRO-90685-04** |



767 Fifth Avenue
New York, NY 10153

T  212.287.3200
F  212.287.3201
pwpartners.com

Date:        April 10, 2019
Invoice:     FRO-90685-05

Mission Coal Funding, LLC
6801 Falls of Neuse RD, Suite 100
Raleigh, NC 27615

Attention:  Jason R. McCoy and Ken McCoy, Members

Invoice

| **Description** | **Amount** |
|---|---|
| Monthly Retainer – April 2019 | $  100,000 |
| Expenses | 44 |

**Amount Outstanding:**

| | |
|---|---|
| Inv# FRO-90685-01 dated December 20, 2018 | 50,000 |
| Inv# FRO-90685-02 dated January 04, 2019 | 105,788 |
| Inv# FRO-90685-03 dated February 1, 2019 | 100,000 |
| Inv# FRO-90685-04 dated March 3, 2019 | 100,000 |
| Amount Billed | $  455,832 |
| Payment Received (February 4, 2019) | ( 75,000) |
| Current Amount Due | $380,832 |

*Payment due upon receipt*

*Please remit payment via wire transfer per the following instructions:*

| | |
|---|---|
| **Bank:** | **Wells Fargo Bank NA** |
| **ABA:** | **121000248** |
| **Account #:** | **4369561329** |
| **Account Name:** | **Perella Weinberg Partners LP** |
| **Reference #:** | **FRO-90685-05** |

Partners have limited liability status



767 Fifth Avenue
New York, NY 10153

T 212.287.3200
F 212.287.3201
pwpartners.com

Date:      April 29, 2019
Invoice:    FRO-90685-06

Mission Coal Funding, LLC
6801 Falls of Neuse RD, Suite 100
Raleigh, NC 27615

Attention:  Jason R. McCoy and Ken McCoy, Members

Invoice

| Description | Amount |
|---|---|
| Amount per Section 2d | $ 1,000,000 |
|     Less: Outstanding Monthly Advisory Fees | (450,000) |
|     Less: February 4, 2019 Payment | (75,000) |
| Incremental Amount per Section 2d | 475,000 |
| **Amount Outstanding:** | |
| Inv# FRO-90685-01 dated December 20, 2018 | 50,000 |
| Inv# FRO-90685-02 dated January 04, 2019 | 105,788 |
| Inv# FRO-90685-03 dated February 1, 2019 | 100,000 |
| Inv# FRO-90685-04 dated March 3, 2019 | 100,000 |
| Inv# FRO-90685-05 dated April 11, 2019 | 100,044 |
| **Total Amount Due** | $ 930,832 |

*Payment due upon receipt*

*Please remit payment via wire transfer per the following instructions:*

**Bank:**            **Wells Fargo Bank NA**
**ABA:**             **121000248**
**Account #:**       **4369561329**
**Account Name:**    **Perella Weinberg Partners LP**
**Reference #:**     **FRO-90685-06**

Partners have limited liability status

UCS-840
(rev. 07/29/2019)

# REQUEST FOR JUDICIAL INTERVENTION

SUPREME _____ COURT, COUNTY OF NEW YORK _____

Index No: __657326/2019__    Date Index Issued: __12/10/2019__

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |
| | Judge Assigned |
| | RJI Filed Date |

**CAPTION**    Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Perella Weinberg Partners LP

                                                    Plaintiff(s)/Petitioner(s)
-against-

Mission Coal Funding, LLC, Jason R. McCoy, and Ken McCoy

                                                    Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING**    Check only one box and specify where indicated.

**COMMERCIAL**
- O  Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ●  Contract
- O  Insurance (where insurance company is a party, except arbitration)
- O  UCC (includes sales and negotiable instruments)
- O  Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**REAL PROPERTY**    Specify how many properties the application includes: _____
- O  Condemnation
- O  Mortgage Foreclosure (specify):    O Residential    O Commercial
  - Property Address: _____
  - *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- O  Tax Certiorari
- O  Tax Foreclosure
- O  Other Real Property (specify): _____

**OTHER MATTERS**
- O  Certificate of Incorporation/Dissolution    [see *NOTE* in **COMMERCIAL** section]
- O  Emergency Medical Treatment
- O  Habeas Corpus
- O  Local Court Appeal
- O  Mechanic's Lien
- O  Name Change
- O  Pistol Permit Revocation Hearing
- O  Sale or Finance of Religious/Not-for-Profit Property
- O  Other (specify): _____

**MATRIMONIAL**
- O  Contested
  - *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI ADDENDUM (UCS-840M).*
  - *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**TORTS**
- O  Asbestos
- O  Child Victims Act
- O  Environmental (specify): _____
- O  Medical, Dental or Podiatric Malpractice
- O  Motor Vehicle
- O  Products Liability (specify): _____
- O  Other Negligence (specify): _____
- O  Other Professional Malpractice (specify): _____
- O  Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- O  CPLR Article 75 (Arbitration) [see *NOTE* in **COMMERCIAL** section]
- O  CPLR Article 78 (Body or Officer)
- O  Election Law
- O  Extreme Risk Protection Order
- O  MHL Article 9.60 (Kendra's Law)
- O  MHL Article 10 (Sex Offender Confinement-Initial)
- O  MHL Article 10 (Sex Offender Confinement-Review)
- O  MHL Article 81 (Guardianship)
- O  Other Mental Hygiene (specify): _____
- O  Other Special Proceeding (specify): _____

**STATUS OF ACTION OR PROCEEDING**    Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ● | O | If yes, date filed: __12/10/2019__ |
| Has a summons and complaint or summons with notice been served? | ● | O | If yes, date served: __12/16/2019__ |
| Is this action/proceeding being filed post-judgment? | O | ● | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**    Check one box only and enter additional information where indicated.

- O  Infant's Compromise
- O  Extreme Risk Protection Order Application
- O  Note of Issue/Certificate of Readiness
- O  Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- O  Notice of Motion    Relief Requested: _____    Return Date: _____
- O  Notice of Petition    Relief Requested: _____    Return Date: _____
- O  Order to Show Cause    Relief Requested: _____    Return Date: _____
- O  Other Ex Parte Application    Relief Requested: _____
- O  Poor Person Application
- ●  Request for Preliminary Conference
- O  Residential Mortgage Foreclosure Settlement Conference
- O  Writ of Habeas Corpus
- O  Other (specify): _____

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**. | | | | |
|---|---|---|---|---|---|
| Case Title | | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**PARTIES**      For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided.
If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**.

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: Perella Weinberg Partners LP<br>Role(s): Plaintiff | Christopher D. Belelieu, Boies Schiller Flexner LLP, 55 Hudson Yards, New York, NY 10001, 212-446-2300, cbelelieu@bsfllp.com | ○ YES   ○ NO | |
| ☐ | Name: Mission Coal Funding, LLC<br>Role(s): Defendant | Jonathan Brennan, Maynard, Cooper & Gale, P.C., 551 Fifth Avenue, Suite 2000, New York, NY 10176, 646-609-9299, jbrennan@maynardcooper.com | ○ YES   ◉ NO | |
| ☐ | Name: Jason R. McCoy<br>Role(s): Defendant | Jonathan Brennan, Maynard, Cooper & Gale, P.C., 551 Fifth Avenue, Suite 2000, New York, NY 10176, 646-609-9299, jbrennan@maynardcooper.com | ○ YES   ◉ NO | |
| ☐ | Name: Ken McCoy<br>Role(s): Defendant | Jonathan Brennan, Maynard, Cooper & Gale, P.C., 551 Fifth Avenue, Suite 2000, New York, NY 10176, 646-609-9299, jbrennan@maynardcooper.com | ○ YES   ◉ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES   ○ NO | |

I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.

Dated: _____02/14/2020_____

_____
Signature

_____4490041_____
Attorney Registration Number

Christopher D. Belelieu
Print Name

Print Form

UCS-840C
3/2011

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF New York

_____ x

Perella Weinberg Partners LP

Plaintiff(s)/Petitioner(s)

-against-

Mission Coal Funding, LLC, Jason R. McCoy, and Ken McCoy

Defendant(s)/Respondent(s)
_____ x

Index No. 657326/2019 _____

RJI No. (if any) _____

**COMMERCIAL DIVISION**
Request for Judicial Intervention Addendum

**COMPLETE WHERE APPLICABLE** [add additional pages if needed]:

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

[X] Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

[ ] Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units)

[ ] Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

[ ] Shareholder derivative actions — without consideration of the monetary threshold

[ ] Commercial class actions — without consideration of the monetary threshold

[ ] Business transactions involving or arising out of dealings with commercial banks and other financial institutions

[ ] Internal affairs of business organizations

[ ] Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

[ ] Environmental insurance coverage

[ ] Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)

[ ] Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold

[ ] Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages** [exclusive of punitive damages, interest, costs and counsel fees claimed]:

$ No less than 930,832 _____

**Plaintiff/Petitioner's claim for equitable or declaratory relief** [brief description]:

Plaintiff seeks damages for breach of contract and account stated, including attorneys' fees, disbursements and costs, as well as pre- and post-judgment interest, for Defendants' failure to pay Plaintiff its fees and expenses pursuant to an engagement letter among the parties.

**Defendant/Respondent's counterclaim(s)** [brief description, including claim for monetary relief]:

n/a

**I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) AND (c).**

Dated: 02/14/2020 _____

_____
SIGNATURE

Christopher D. Belelieu
PRINT OR TYPE NAME